UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Joshua Many,

    Plaintiff,

    v.                        Civil Action No. 2:19-cv-42-wks-jmc

Vermont Department of Corrections
and Centurion Healthcare,

    Defendants.

# REPORT AND RECOMMENDATION
# AND ORDER
(Docs. 6, 10)

Plaintiff Joshua Many, proceeding *pro se*, brings this action under 42 U.S.C. § 1983 against Defendants, the Vermont Department of Corrections (DOC) and Centurion Healthcare (Centurion) (collectively, "Defendants"). Many alleges that when he entered DOC custody in May 2017, he had an existing health condition consisting of shotgun pellets lodged in his leg and claims that—although he has requested care for pain associated with the pellets—Defendants are acting in collusion to deny him adequate healthcare. (Doc. 6 at 1–2.) For relief, Many seeks a hearing, an "immediate medical injunction," appointment of counsel, and leave to amend to seek monetary damages. (*Id.* at 2–3.)

In addition to Many's requests for counsel and leave to amend, presently before the Court is Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 10.) Although the Court informed Many of the importance of responding to a

motion by Defendants, warning him that failure to respond may result in dismissal of his case (*see* Doc. 4 at 3–4), he has nevertheless not responded to the Motion.

Concluding that Many has failed to allege facts sufficient to state a plausible claim against Centurion or the DOC, I recommend that the Motion to Dismiss (Doc. 10) be GRANTED and the Complaint (Doc. 6) be DISMISSED for failure to state a claim. However, I recommend Many be afforded leave to amend as further discussed below. Many's request for appointment of counsel (*id.* at 3) is DENIED at this time.

### Factual and Procedural Background

The sparse facts alleged in Many's three-page Complaint (Doc. 6) are supplemented by the information gleaned from the attachments to the Complaint, consisting of DOC grievance forms.[1] Many entered the custody of the DOC on May 30, 2017, with "an existing health issue after being shot with a shotgun just prior to arrest." (*Id.* at 1.) He alleges Defendants are responsible for his safety and health care. (*Id.*)

On July 2, 2017, he submitted a request for care to address "issues of pain and lead pellets in his leg and hip area." (*Id.* at 1–2.) After receiving no care, on July 28, 2018, Many filed a grievance because the condition was becoming more painful. (Doc. 6-2.) On July 29, 2018, he submitted a second grievance addressing the same issue. (Doc. 6-4.) On August 9, 2018, he again sought medical attention, complaining of pain related to his condition. (Doc. 6 at 2.) August 20, 2018, he

---

[1] In evaluating a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

submitted a third grievance (*id.*), and, on September 22, 2018, an appeal to the Director of Health Services. (Doc. 6-7.)

On November 7, 2018, Many's appeal was "sustained and he was to see an outside provider for medical care." (Doc. 6 at 2; *see also* Doc. 6-10 ("We have requested an appointment with the provider be scheduled to reconsider your request for an appointment with an outside specialist. . . . Your grievance is sustained.").) Because he did not receive an outside appointment and he continued to suffer pain and increasing symptoms, Many filed this action, alleging he has exhausted all remedies. (Doc. 6 at 2.) On March 20, 2019, the Court granted Many's request to proceed *in forma pauperis* and his Complaint was filed. (*See* Docs. 1, 4, 6.)

## Analysis

### I.     Legal Standard for a Rule 12(b)(6) Motion to Dismiss

In evaluating whether to dismiss a complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the court tests the pleading for "facial plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This does not require a plaintiff to provide "detailed factual allegations" to support his claims, *Twombly*, 550 U.S. at 555, but allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102,

104 (2d Cir. 2009); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

In assessing the adequacy of the pleadings, a court must accept all factual assertions as true and draw all reasonable inferences in favor of the plaintiff. *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016). A complaint is properly dismissed where, as a matter of law, "the allegations in [it], however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Because Many is representing himself, in addition to accepting his factual allegations as true, the Court is also required to read his Complaint liberally and construe it to raise the strongest possible argument. *Harris v. Miller*, 818 F.3d 49, 56–57 (2d Cir. 2016) (per curiam).

**II.    Section 1983**

Under 42 U.S.C. § 1983, a plaintiff may bring suit "against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C. § 1983). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Id*. The Supreme Court has identified two elements of a § 1983 claim: "a plaintiff [(1)] must allege the violation of a right secured by the Constitution and laws of the United States, and [(2)] must show that the alleged deprivation was

4

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Section 1983 does not itself create or establish a federally protected right; instead, it creates a cause of action to enforce federal rights created elsewhere, such as a federal constitutional right. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Although Many does not cite to a specific constitutional provision that Defendants violated, because Many was a state prisoner when his claims arose, this Court construes Many's claim as alleging that Defendants deprived him of his Eighth Amendment right to adequate medical care. Under the test established by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), the inquiry in a § 1983 action like this is generally "whether the treating physician or other prison official was deliberately indifferent to a prisoner's serious medical needs." *Hathaway v. Coughlin*, 37 F.3d 63, 68 (2d Cir. 1994). This test has objective and subjective components. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). The objective prong looks to the severity of the alleged deprivation while the subjective prong asks whether the prison official acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003).

Under the objective prong, the Court must determine "whether the prisoner was actually deprived of adequate medical care" and "whether the inadequacy in medical care is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006). To determine whether a deprivation reaches the requisite threshold, these two inquiries are "tailored to the specific circumstances of each case." *Smith*, 316 F.3d at 185. Several factors are relevant to the seriousness of the medical

5

condition: whether a reasonable doctor or patient would comment on the condition; whether the prisoner's daily activities are affected by the condition; and whether the condition causes chronic and substantial pain. *Salahuddin*, 467 F.3d at 280. If the prisoner complains of a delay or interruption in treatment, the seriousness inquiry "focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Id.* (alteration and internal quotation marks omitted). "[O]nly those deprivations denying the minimal civilized measure of life's necessities[] are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal quotation marks and citation omitted).

Under the subjective prong of the *Estelle* test, a prison official must exhibit deliberate indifference to the prisoner's health or safety to violate the prisoner's constitutional rights. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson*, 501 U.S. at 302–03). Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm; it is the equivalent of acting recklessly. *Id.* at 835–36. Neither "negligen[ce] in diagnosing or treating a medical condition," *Estelle*, 429 U.S. at 106, nor the inmate's "mere disagreement over the proper treatment," *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998), give rise to an Eighth Amendment claim. *See also Nails v. Laplante*, 596 F. Supp. 2d 475, 480 (D. Conn. 2009) ("Inmates do not have a constitutional right to the treatment of their choice.").

To demonstrate the requisite culpability, "proof of awareness of a substantial risk of the harm suffices." *Salahuddin*, 467 F.3d at 280. As with other questions of

6

fact, this showing may be made using direct evidence, circumstantial evidence, or "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. If the evidence does not show that a prison official had knowledge of a risk to a prisoner or the facts underlying such a risk, the official cannot be found culpable. *Id.* at 844; *see also id.* at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Moreover, even if an official "actually knew of a substantial risk to inmate health or safety," that official "may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Given that different standards apply to the DOC and Centurion, the Court addresses whether Many has stated a claim against each Defendant in turn.

### A. Claims against DOC

Fundamentally, in order to sustain a claim for relief under § 1983, a plaintiff must "identify the individuals or distinct legal entity alleged to have acted under color of state law." *Wilson v. S. Health Partners Nursing Staff*, 1:18-cv-00013-FDW, 2018 WL 1972716, at *2 (W.D.N.C. Apr. 26, 2018); *Mallgren v. Burkholder*, 52 F. Supp. 3d 490, 495 (E.D.N.Y. 2014) ("Section 1983 claims generally must be brought against the individuals personally responsible for the alleged deprivation of constitutional rights.").

Here, Many names the DOC and Centurion as defendants in his Complaint. Defendants argue that Many's claims against the DOC are barred by Vermont's

7

sovereign immunity under the Eleventh Amendment to the United States Constitution. (Doc. 10 at 2–3.) The Eleventh Amendment[2] protects a state from suits in federal courts unless there has been an explicit and unequivocal waiver of immunity by a state or a similarly clear abrogation of immunity by Congress. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). Agencies and departments of a state are entitled to assert the state's Eleventh Amendment immunity. *Pennhurst*, 465 U.S. at 100; *see also Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (noting Eleventh Amendment immunity extends to "state agents and state instrumentalities that are, effectively, arms of a state") (internal quotation marks omitted).

The State of Vermont has not waived its Eleventh Amendment sovereign immunity. In fact, the Vermont Legislature has specifically preserved the State's immunity under that Amendment. *See* 12 V.S.A. § 5601(g) (Vermont Tort Claims Act reserves Eleventh Amendment immunity for all claims not specifically waived). It is also well settled that Congress did not abrogate state sovereign immunity by enacting § 1983. *See Quern v. Jordan*, 440 U.S. 332, 340–42 (1979).

Further, § 1983 allows suit against "persons." Defendants argue the DOC, a state agency, is not a "person" for purposes of the statute. (Doc. 10 at 4.) I agree.

---

[2] Although the Amendment, by its terms, bars only federal suits against state governments by citizens of another state or foreign country, it has also been interpreted to bar federal suits against state governments by a state's own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 15 (1890).

8

"'Neither a state nor one of its agencies . . . is a 'person' under § 1983.'"[3] *Thompson v. Pallito*, 949 F. Supp. 2d 558, 572 (D. Vt. 2013) (quoting *Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998)). Accordingly, I recommend that Defendants' Motion to Dismiss be GRANTED with respect to Many's claims against the DOC.[4]

## B. Claims Against Centurion

Defendants argue that Many also fails to state a claim against Centurion. (Doc. 10 at 4–6.) I agree. Many's claims against Centurion fail because Many does not show that a policy or custom promulgated by Centurion caused the allegedly inadequate care he received.

Generally, an employer is not liable for the acts of its employees under the tort theory of respondeat superior in suits brought under § 1983. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981). Although this rule was initially established in the context of municipal employers, it has been extended to private employers as well. *See Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *see also Draeger v. Grand*

---

[3] A suit for money damages against a DOC official sued in his or her official capacity would also be barred. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against that official but rather is a suit against the official's office.").

[4] Here, Plaintiff expressly seeks injunctive relief. (Doc. 6 at 3 ("Order immediate medical injunction").) While a state is not a suable "person" for purposes of § 1983, a claim for an injunction to prevent a continuing violation of federal law may nevertheless survive. *See Green v. Mansour*, 474 U.S. 64, 68 (1985). At this stage, it is not clear whether a continuing violation is occurring. Further, the requirements for the Court to issue an injunction are specific. *See* Fed. R. Civ. P. 65(d)(1) ("Every order granting an injunction . . . must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."); *see also City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011) ("[T]o comply with Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law.") (internal quotation marks omitted). Accordingly, the claim for injunctive relief under § 1983 should be DISMISSED without prejudice.

*Cent., Inc.*, 504 F.2d 142, 145–46 (10th Cir. 1974). Accordingly, in the ordinary case, private employers like Centurion are not liable for the constitutional torts of their employees, "unless the plaintiff proves that 'action pursuant to official . . . *policy* of some nature caused a constitutional tort.'" *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990) (alteration in original) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978)); *see also Vega v. Fox*, 457 F. Supp. 2d 172, 183 (S.D.N.Y. 2006); *Cochran v. CCA-LAC Med. Dep't*, No. 1:06-CV-116, 2007 WL 431118, at *2–3 (D. Vt. Feb. 5, 2007).

In this case, it is arguable that Centurion is more than a mere private corporation, since it provides medical care to prisoners on behalf of the State of Vermont. *See Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 527 (2d Cir. 1996) ("The fact that a municipality is responsible for providing medical attention to persons held in its custody may make an independent contractor rendering such services a state actor within the meaning of § 1983 with respect to the services so provided.").[5] But regardless of whether Centurion is considered a private corporation or a state actor, Many still must allege that his inadequate medical treatment was caused by an action taken pursuant to an official policy or custom promulgated by Centurion. *Monell*, 436 U.S. at 691. Many has not made such a claim in his cursory Complaint. (*See generally* Doc. 6.)

---

[5] Defendants readily admit that Centurion should be considered a state actor in this regard and argues that Centurion should therefore be shielded by sovereign immunity. (Doc. 10 at 6–8.) Because Many has failed to allege that his inadequate medical care was due to an official policy of Centurion, however, the Court need not evaluate this argument at this time.

Many's "general and conclusory" allegations are insufficient to establish any plausible claim of liability against Centurion. *See Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015). Accordingly, I recommend that Defendants' Motion to Dismiss be GRANTED with respect to Many's claims against Centurion.

## III. Leave to Amend

Many has explicitly requested leave to amend his Complaint. (Doc. 6 at 3.) A self-represented plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks omitted); *see also Garcia v. Superintendent of Great Meadow Corr. Facility*, 841 F.3d 581, 583 (2d Cir. 2016) (per curiam) (cautioning leave to amend should be granted at least once unless amendment would be futile). I therefore recommend that the Court grant Many leave to amend his Complaint.

Many requests leave to amend to "seek monetary damages . . . when more facts are clear and the parties responsible for denial of [his] basic medical care are clearly named." (Doc. 6 at 3.) Based upon this statement—and the absence of individual defendants in the Complaint—the Court assumes that Many is not currently aware of the identity of those directly responsible for his allegedly inadequate medical care. "While a plaintiff generally cannot bring a claim against an unidentified person, the rule is not applied strictly against pro se plaintiffs, especially when incarcerated." *Warren v. Goord*, 476 F. Supp. 2d 407, 413 (S.D.N.Y. 2007). The Second Circuit has recognized that a self-represented litigant may be entitled to assistance from a district court in ascertaining the identity of an

11

unidentified defendant. *Wilson v. 103RD Precinct*, 182 F.3d 902, No. 96-2703, 1999 WL 494868, at *2 (2d Cir. 1999); *see also Valentin v. Dinkins*, 121 F.3d 72, 75 (2d Cir. 1997) ("From his place of incarceration, it is hard to see what investigative tools would be at his disposal to obtain further information on [the defendant's] identity."). Accordingly, a district court is empowered with broad discretion to attempt to ascertain the identity of the defendants in question. *See Valentin*, at 76 ("The district court may pursue any course that it deems appropriate to a further inquiry into the identity of [unidentified defendants].").

Although I recommend dismissal of the claims against the DOC and Centurion for the reasons described above, counsel for these Defendants is nonetheless ordered to release to Many all reports regarding his medical care, and to assist Many in ascertaining the identities of all individuals involved in his medical treatment for the period of July 2017 to January 2019.[6] If adopted, this order merely provides a means by which Many may name the individual defendants as instructed by the Second Circuit. The assistance shall be rendered within 30 days of the District Court's Order with regard to this Report and Recommendation. Many should then be allowed leave to file an Amended Complaint naming those individuals he intends to sue no later than 30 days after receiving the identifying information.

Many is advised that an Amended Complaint, if filed, will supersede and completely replace the original Complaint. *See Int'l Controls Corp. v. Vesco*,

---

[6] Although Many's Complaint was filed in March 2019, he signed the pleading on January 22, 2019. (*See* Doc. 6 at 3.)

556 F.2d 665, 668 (2d Cir. 1977). Accordingly, an Amended Complaint, if filed, must include all of Many's factual allegations in their entirety and must set forth all the claims Many has against all defendants and all the relief he seeks; reference back to the original Complaint is insufficient under Rule 15(b) of the Local Rules of Civil Procedure for the District of Vermont. *See* Fed. R. Civ. P. 8(a); L.R. 15(b). Equally important, an Amended Complaint must comport with the Federal Rules of Civil Procedure, including setting forth short and plain statements of each claim as required by Rule 8, and doing so in numbered paragraphs as required by Rule 10. For further reference, Many may consult the Court's Representing Yourself as a *Pro Se* Litigant Guide, available at http://www.vtd.uscourts.gov/sites/vtd/files/ProSeGuide113015.pdf.

## IV. Many's Request to Appoint Counsel

Many requests the Court appoint counsel to represent him. (Doc. 6 at 3.) Specifically, he requests "pro bono counsel" (*id.*), presumably meaning at the expense of the Court.

"A party has no constitutionally guaranteed right to the assistance of counsel in a civil case." *Leftridge v. Conn. State Trooper Officer # 1283*, 640 F.3d 62, 68 (2d Cir. 2011). Nevertheless, a party granted *in forma pauperis* status may request the Court for the appointment of an attorney if unable to afford one on their own. *See* 28 U.S.C. § 1915(e)(1). A court may ask an attorney to represent an indigent litigant under § 1915(e)(1), but there are no court funds available to pay an attorney. *Clarke v. Blais*, 473 F. Supp. 2d 124, 125 (D. Me. 2007). "As a result, [these] appointments occur very rarely, being saved for cases that appear to have some

13

chance of success." *Id.* (footnote omitted). A district court is granted "[b]road discretion" in making this decision. *See Hodge v. Police Officers*, 802 F.2d 58, 60 (2d. Cir. 1986).

The Second Circuit has laid out a framework for determining whether counsel should be appointed for *in forma pauperis* litigants in civil cases. *Id.* at 61. As a threshold requirement, a court must determine whether the indigent's claim "is likely one of substance." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (citing *Hodge*, 802 F.2d at 61). Once satisfied, the court

> should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason . . . why appointment of counsel would be more likely to lead to a just determination.

*Hodge*, 802 F.2d at 61–62. A court may also consider if the indigent party has made an effort to retain counsel and the general availability of counsel able to provide representation on a pro bono basis. *See Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989); *see also Hodge*, 802 F.2d at 61.

Here, the Court has already granted Many's motion to proceed *in forma pauperis* (Doc. 4 at 1); therefore, there is little question he is unable to afford counsel on his own. He seeks to bring this action under 42 U.S.C. § 1983 against those "responsible for his safety and Health Care [sic]" in prison. (Doc. 6 at 1.) It appears that Many primarily seeks to allege an Eighth Amendment claim that he has not received adequate medical care, requiring him to prove that prison officials acted with "deliberate indifference" to his serious medical needs. *Hathaway*, 37 F.3d

14

at 68. It does not appear to be an overly complex claim. Presuming that Many raises a claim that is likely of substance, the other *Hodge* factors weigh against the appointment of counsel at this time. Many has not contended that he has made efforts to obtain counsel on his own and he has the apparent ability to investigate the facts of the case as he is in possession of the grievance materials. At this early stage, Many has not shown that conflicting evidence will be presented. No special reason, other than that Many is an inmate, is advanced or apparent to warrant appointment of counsel. Accordingly, Many's request for appointment of counsel (Doc. 6 at 3) is DENIED.

## **Conclusion**

For the foregoing reasons, I recommend that the Court GRANT the Vermont Department of Corrections and Centurion Healthcare's Motion to Dismiss (Doc. 10), and DISMISS the claims alleged in Many's Complaint (Doc. 6). Although I recommend dismissal of the claims, I further recommend counsel for Defendants be ordered to release to Many all reports regarding his medical treatment to assist Many in ascertaining the identities of all individuals involved in his medical treatment for the period of July 2017 to January 2019. This assistance must be rendered within 30 days of the Court's order with regard to this Report and Recommendation. Many may then file an Amended Complaint no later than 30 days after receiving the identifying information. In the event Many elects not to file an Amended Complaint within 30 days of the Court's order, this case should be closed.

ORDERED: Many's request for appointment of counsel (Doc. 6 at 3) is DENIED.

Dated at Burlington, in the District of Vermont, this 13th day of November 2019.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).